**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
ADRIENNE CRANE,

                          *Plaintiff*,

               -against-

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

                        *Defendant*.
-------------------------------------------------------------X

                         **MEMORANDUM**
                            **ORDER**
                     22-CV-07133 (JMW)

**A P P E A R A N C E S:**

    Daniel Adam Osborn, Esq.
    **Osborn Law P.C.**
    43 West 43rd Street, Ste 131
    New York, NY 10036

          -and-

    **Lindsay Trust, Esq.**
    43 West 43rd Street, Suite 131
    New York, NY 10036
    *Attorneys for Plaintiff*


    Social Security Administration
    **Office of the General Counsel**
    **c**/o Office of Legal Operations/Blake Pryor
    6401 Security Boulevard
    Altmeyer Building, Room 617
    Woodlawn, MD 21235

          -and-

    Christopher N. Hurd, Esq.
    Special Assistant U.S. Attorney
    **C/O SSA Office of The General Counsel**
    6401 Security Boulevard

1

Baltimore, MD 21235

    -and-

Erin Jurrens, Esq.
Special Assistant U.S. Attorney, DOJ
**Social Security Administration**
6401 Security Boulevard
Baltimore, MD 21235
*Attorneys for Defendant*

**WICKS**, Magistrate Judge:

Plaintiff Adrienne Crane ("Plaintiff" or "Ms. Crane") seeks review and reversal of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant"), reached after a hearing before an administrative law judge ("ALJ"), denying her application for a period of disability and disability insurance benefits ("DIB") benefits under Title II of the Social Security Act (the "Act") (hereafter, the "ALJ's Decision"). Now before the Court is: (i) Plaintiff's Motion for Judgment on the Pleadings (ECF No. 22); and (ii) Defendant's Cross Motion for Judgment on the Pleadings, seeking an affirmation of the ALJ's Decision. (*See* ECF No. 24.) For the reasons stated herein, Plaintiff's Motion (ECF No. 22) is **DENIED**, the Commissioner's Cross Motion (ECF No. 24) is **GRANTED**, and ALJ's Decision is **AFFIRMED**, consistent with this Order.

## BACKGROUND

### I.    Factual Background

The following facts are taken directly from the parties' Joint Stipulation of Facts at ECF No. 23. On July 25, 2019, Ms. Crane filed a Title II application for a period of disability and DIB due to herniated discs in her neck, lower back pain, diabetes, depression, anxiety, high blood pressure, and high cholesterol, with a disability onset date of March 31, 2015. (ECF No. 23 at ¶ 1.) Ms. Crane's application was denied initially on November 15, 2019, and upon reconsideration on October 21, 2020. (*Id.*) Ms. Crane requested a hearing and administrative hearings were held

before the ALJ on April 1, 2021, and November 16, 2021. (*Id*.) In a decision dated November 23, 2021, the ALJ found Ms. Crane not disabled. (*Id*.) Ms. Crane filed a request for review with the Appeals Council, and her request was denied on September 28, 2022. (*Id*.) As such, the decision of the ALJ became the final decision of the Commissioner, from which Ms. Crane filed her appeal. (*Id*.) The relevant period for Ms. Crane's DIB application runs from her alleged disability onset date of March 31, 2015, to her date last insured ("DLI") of March 31, 2017. (*Id*. at ¶ 2.)

Ms. Crane testified at the April 21, 2021, hearing. (*Id*. at ¶ 3.) She testified that she reviewed the file, and it was missing medical records from two of her doctors: Dr. Kalter and Dr. Hussaini. (*Id*.) Upon further questioning by the ALJ, Ms. Crane also identified three other doctors who treated her during the relevant period and whose medical records were also missing: Dr. Raj Krishnan, Dr. Bruno, and Dr. O'Brien. (*Id*.) Ms. Crane testified that if the ALJ obtained records from the identified providers it would encompass all her treatment from the relevant period. (*Id*.) At the time of the hearing, Ms. Crane was 53 years old with a high school education. (*Id*. at ¶ 4.) She has multiple herniated and bulging discs, she suffers from pain, and she has severe orthopedic and nerve issues, including tingling, numbness, and pain in her hands, arms, back and neck. (*Id*.) Ms. Crane is unable to sit or stand for long and her hands are usually swollen and numb. (*Id*.)  She takes Vicodin, Meloxicam, and sometimes Chlorzoxazone. (*Id*.) On a typical day, Ms. Crane watches television and goes to physical therapy and doctors' appointments. (*Id*. at ¶ 5.) It takes her a while to wake up in the morning because she must wait for her medications to kick in. (*Id*.)  She has difficulty dressing and sleeping due to pain. (*Id*.)

An MRI of the cervical spine in August 2013 revealed moderate to severe cervical spondylosis with a right paracentral/foraminal C5-6-disc protrusion which contracts the right ventrolateral cervical cord and causes a mass effect upon the right C6 nerve root. (*Id*. at ¶ 6.) An

3

MRI of the cervical spine on April 26, 2016, revealed degenerative changes with cord flattening and significant foraminal stenosis, particularly at C3-C4, C4-C5, and C5-C6, accompanied by reversal of the cervical lordosis and convexity towards the right. (*Id*. at ¶ 7.) An MRI of the left shoulder on May 3, 2016, revealed supraspinatus tendinopathy and an MRI of the right shoulder taken on May 4, 2016, revealed rotator cuff tendinopathy and fraying, in addition to AC joint arthropathy. (*Id*.) An MRI of the right shoulder taken on November 8, 2017, revealed supraspinatus tendinopathy, AC arthritis, mild osseous edema, capsular hypertrophy and spurring, and bursitis. (*Id*. at ¶ 8.)

In August 2018, Ms. Crane was treated by Raj Krishnan, M.D. for neck and shoulder pain. (*Id*. at ¶ 9.) Dr. Krishnan noted that Ms. Crane recently underwent a crevicular epidural steroid injection and reported greater than 75% improvement in neck pain as well as improvement in range of motion. (*Id*.) She reported shoulder pain and Dr. Krishnan noted that she has arthritic changes in the shoulders with degenerative tears. (*Id*.) Ms. Crane had also undergone shoulder injections in the past that had helped with shoulder pain. (*Id*.) Ms. Crane found that Buprenorphine injections helped significantly with her pain, and she was happy with the response; she was more awake and had less side effects. (*Id*.) Ms. Crane was not taking any medications for pain other than Buprenorphine. (*Id*.) She rated her pain as an 8 out of 10 at rest and reported that it affected her sleep and activities of daily living. (*Id*.) Examination by Dr. Krishnan showed a non-antalgic gait; she had a reduced range of motion in the cervical spine and positive Spurling's test for shooting and tingling pain down the bilateral arms, no cervical spinal tenderness but bilateral cervical paraspinal muscle spasm. (*Id*.) Examination also showed normal motor strength and no muscle atrophy, but diminished sensation to light touch, in addition to tenderness and limited range of motion in the right shoulder. (*Id*.) Dr. Krishnan diagnosed cervicalgia, cervical disc disorder with

radiculopathy, and pain in the right shoulder. (*Id*.)

In September 2018, Dr. Krishnan continued to document "good" pain relief from cervical epidural steroid injection, in addition to her medications including Buprenorphine, chlorzoxazone, clonazepam, and Effexor. (*Id*. at ¶ 10.)  Examination of the cervical spine showed full range of flexion, extension, and lateral bending, but rotation was limited to 70 degrees (out of a possible 80). (*Id*.) Ms. Crane showed full range of motion in both shoulders with tenderness. (*Id*.)  She continued to with Dr. Krishnan monthly between October 2018 and August 2019. (*Id*.)  Ms. Crane was treated by Manuel Lee, M.D. beginning in December 2019. (*Id*. at ¶ 11.)  Treatment records note chronic worsening pain in Ms. Crane's neck, back, and shoulders for the prior six years. (*Id*.)  She reported previously treating with Dr. Raj Krishnan, but he no longer took her insurance.  (*Id*.)  Dr. Lee's examination showed a full range of motion in her cervical spine but with pain on extension and rotation; range of motion in her shoulders, elbows and wrists was full. (*Id*.)  Ms. Crane had full motor strength in her upper and lower extremities, and intact sensation, but tenderness in the lumbar paraspinal muscles. (*Id*.)   Dr. Lee diagnosed anxiety, cervical radiculopathy, chronic pain in both shoulders, lumbar radiculopathy, lumbar spondylosis and myofascial pain. (*Id*.)

Ms. Crane presented to Dr. Syed Hussaini in April 2020 for evaluation and treatment of her mental impairments. (*Id*. at ¶ 12.)  She reported a long history of depression and anxiety and tried different medications like Effexor, none of which worked. (*Id*.) She further reported feeling helpless, hopeless, worthless, anxious, and having panic attacks, especially when going out and meeting new people. (*Id*.) She reported taking Effexor, which did not provide any relief, as she continued to have symptoms of depression, anxiety, and insomnia. (*Id*.) A mental status examination revealed guarded behavior and obsessive thoughts; however, she displayed a normal

range of affect, organized thought processes, intact memory, adequate attention, average intelligence, was alert and oriented in three spheres, and denied hallucinations or perceptual disturbances. (*Id*.) She denied a history of mental health conditions and had not been on psychiatric medication in the past. (*Id*.) Dr. Hussaini diagnosed anxiety and depression. (*Id*.) The following month, Ms. Crane reported continued feelings of depression and anxiety, in addition to mood swings and irritability. (*Id*.) A subsequent mental examination revealed anxious, depressed, and irritable mood, in addition to obsessive thoughts; however, she displayed cooperative behavior and normal rare speech, a normal range affect, organized thought processes, intact memory, adequate attention, was oriented in three spheres, and denied hallucinations or perceptual disturbances. (*Id*.) She said her medications were not providing relief and she agreed to try Lexapro and Abilify. (*Id*.)

In June 2020, at a telephonic visit, Ms. Crane reported feeling better on Lexapro and Abilify; she agreed to start tapering off Effexor. (*Id*. at ¶ 13.) Dr. Hussaini reported that her symptoms had decreased in severity since the last visit. (*Id*.) Her mental status examination no longer showed deficits in mood or obsessive thoughts, and findings were unremarkable in all areas. (*Id*.) Mental status examinations remained unremarkable in July; however, Ms. Crane reported that she continued to feel anxious at times, and she agreed to increase Lexapro to 10mg. (*Id*.) By August 2020, Ms. Crane stated at her telephonic visit that she was feeling better and wanted to decrease her Effexor dosage. (*Id*. at ¶ 14.) Dr. Hussaini noted her symptoms had improved since the last visit and a mental status examination continued to show unremarkable findings. (*Id*.) Ms. Crane reported her mood was better on Lexapro at her September 2020 telephonic visit, and stated she wanted to increase her Lexapro dosage and discontinue Effexor. (*Id*. at ¶ 15.) Hussaini reported her symptoms had decreased since the last visit, and mental status examination continued to show unremarkable findings. (*Id*.)

By October 2020, Ms. Crane reported feeling "okay, but it could be better." (*Id*. at ¶ 16.) Dr. Hussaini noted that Ms. Crane's "primary symptoms of depression and anxiety have remained the same in severity" since the September visit, and he added Wellbutrin to Ms. Crane's medications. (*Id*.) The mental status examination was unremarkable save for a depressed mood. (*Id*.) In November, Ms. Crane reported her mood was better and she denied symptoms of anxiety and depression. (*Id*. at ¶ 17.) She reported a normal appetite and sleeping 6-8 hours. (*Id*.) The mental status examination was again normal. (*Id*.) On March 9, 2020, Ms. Crane had an initial evaluation with Matthew Kalter, M.D. (*Id*. at ¶ 18.) She reported aching and sharp neck and low back pain, difficulty walking, motor loss, and joint stiffness. (*Id*.) Upon examination, Dr. Kalter noted a limited range of motion in the cervical and lumbar spine secondary to pain, with tenderness to palpitation over the cervical and lumbar paraspinal muscles with palpable spasms. (*Id*.) Plaintiff demonstrated full strength and reflexes in the upper and lower extremities, but decreased sensation in the distal upper extremities, positive Spurling's test, and positive straight leg raise bilaterally. (*Id*.) Dr. Kalter additionally assessed cervical and lumbar spondylosis/radiculitis, and ultimately recommended Plaintiff not lift more than 15 pounds, not have flexion/extension greater than 15 degrees, and not stand or walk for more than one hour at a time. (*Id*.) Dr. Kalter also recommended physical therapy three times a week for four weeks and prescribed Norco (a combination of acetaminophen and the opioid hydrocodone) and Meloxicam (a non-steroidal anti-inflammatory). (*Id*.)

In a medical questionnaire dated July 20, 2021, Dr. Kalter opined that Ms. Crane can occasionally lift and carry up to 10 pounds, sit for 4 hours and stand or walk for 3 hours total in an 8-hour day, never reach or push/pull, occasionally operate foot controls bilaterally, occasionally balance but never climb ramps, stairs, ladders or scaffolds, stoop, kneel, crouch or crawl, and never

be exposed to unprotected heights, moving mechanical parts or operate a motor vehicle. (*Id*. at ¶ 19.)  According to Dr. Kalter, Ms. Crane's limitations are caused by severe nerve compression in her neck and back, disc herniations, and severe pain. (*Id*.) Dr. Kalter further reported that Ms. Crane is on pain medications, and she cannot drive or operate machinery. (*Id*.) Medical Expert ("ME") Beverly Jean Yamour, M.D., testified before the ALJ on November 16, 2021. (*Id*. at ¶ 20.) The ME testified that Ms. Crane has a lot of problems with her neck, including radiculopathy and nerve root compression. (*Id*.) The ME further testified that Ms. Crane's neck impairment did not meet listing 1.15; although sections A, B, and C were met because she has nerve root compression, pain, paresthesia, and radiating pain in her arm, section D was not met because Ms. Crane did not use a walker or bilateral canes. (*Id*.)  She further testified that Ms. Crane likely meets the same requirements of the listing for her cervical spine, but the record does not include any imaging of this area during the relevant period. (*Id*.) The ME further testified that she agrees with the opinion of Ms. Crane's medical provider that Ms. Crane could perform sedentary work with the following limitations: (i) no lifting over 15 pounds; (ii) no standing or walking greater than 1 hour at a time; and (iii) limited ability to bend/stoop/squat, and never crawl. (*Id*.)

Vocational Expert ("VE") Susan Gaudet testified before the ALJ on November 16, 2021. (*Id*. at ¶ 21.)  The VE testified to Ms. Crane's past work as an audit clerk, bank teller, and retail store manager/accounting clerk. (*Id*.) The ALJ asked the VE to consider a hypothetical individual limited to work at the sedentary exertional level with the following limitations: (i) could lift up to 15 pounds occasionally; (ii) sit for 6 hours and stand or walk for 2 hours, but no standing or walking greater than 1 hour continuously; and (iii) can sit and stand for 30 minutes continuously. (*Id*. at ¶ 22.)  The VE testified that such an individual would be able to perform Ms. Crane's prior work as an audit clerk. (*Id*.) The VE further testified that 10% time off-task and 8 annual absences would

be tolerated. (*Id.*)

## II.    <u>The ALJ's Decision</u>

The ALJ's Decision, dated November 29, 2021, ultimately denied Plaintiff's claim for disability benefits under the Act. *See* ECF No. 9 at 20 ("Based on the application for a period of disability and disability insurance benefits filed on July 25, 2019, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through March 31, 2017, the last date insured."). Pursuant to 20 C.F.R. § 404.1520, the ALJ made the following findings of fact and conclusions of law:

1. **The claimant last met the insured status requirements of the Social Security Act on March 31, 2017.**

2. **The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 31, 2015, through her date last insured of March 31, 2017.**

3. **Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical spine and degenerative joint disease of the bilateral shoulders**. The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28. In addition, the claimant has non-medically determinable impairments of hypertension, hyperlipidemia, diabetes mellitus type II, major depressive disorder, and generalized anxiety disorder. These aforementioned impairments were diagnosed after the date last insured ("DLI") of March 31, 2017, and thus, they are not were not medically determinable impairments during the applicable period from the alleged onset date to the DLI.

4. **Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1**. No treating or examining physician has indicated clinical signs or diagnostic findings that meet or are comparable to the severity requirements of a listed impairment. Specific consideration has been given to the applicable listings under section 1.15 and 1.18 *Musculoskeletal Disorders* of the listed impairments.

5. **Through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift and carry up to fifteen pounds occasionally and can sit for six hours and stand/walk for two hours in an eight-hour workday. However, the claimant can only stand or walk up to one hour at a time without interruption.**

6. **Through the date last insured, the claimant was capable of performing past relevant work as an audit clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.** The claimant has past work as an audit clerk, which requires sedentary physical exertion and is skilled with an SVP of seven. The vocational expert testified the claimant actually performed this job at an SVP level of five though. This job satisfies the recency, durational, and earnings requirements necessary to be deemed past relevant work. At the hearing, the vocational expert testified that under this decision's residual functional capacity, the claimant would be able to perform this past work. Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of this work,  the claimant is able to perform it as actually and generally performed. The vocational expert noted that her opinion was consistent with the Dictionary of Occupational Titles, except with respect to the ability to stand and walk at one time, which the vocational expert said was based upon her education, training and experience.

7. **The claimant was not under a disability, as defined in the Social Security Act, at any time from March 31, 2015, the alleged onset date, through March 31, 2017, the date last insured.**

(*Id*. at 15-20.)

The ALJ further elaborated that in making the determination that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, he "considered all symptoms and the extent to which [those] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (*Id*. at 17.) The ALJ also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c. (*Id*.) In considering the Plaintiff's symptoms, the ALJ specifically followed a two-step process: (i) determine whether there is an underlying medically determinable physical or mental impairment(s) – *i.e*., an

impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms; and (ii) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. (*Id.*) The ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [he] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work related activities." (*Id.*)

The ALJ found the record includes extensive medical evidence that post-dates the date the claimant was last insured, which was on March 31, 2017, and "[w]hile these records provide substantive evidence of the claimant's more recent functional capacity, a detailed analysis of those records is unnecessary because her condition was found 'not disabled' prior to expiration of her date last insured." (*Id.* at 18.) The ALJ further noted that "to the extent as those records reflect on the claimant's conditions as they existed prior to March 31, 2017, [he] ha[d] adequately considered them and incorporated all medically supported restrictions into [the] [RFC] assessment." (*Id.*) Specifically, the ALJ considered and noted the following evidence:

> The claimant, a 54-year-old woman, alleges disability based on neck and bilateral shoulder pain. She stated that she can no longer do recreational activities, has pain with cleaning and doing laundry, and trouble with driving and reading. Additionally, the claimant said she cannot sleep on either side due to shoulder pain, cannot hold her arms up for long, has trouble bending over, no longer cooks every day, and can only drive short distances. She added that she cannot lift anything heavy, stand for long periods of time, gets tired when she walks, and has difficulty sitting for long periods of time. Also, she has pain with reaching, does not squat or kneel, and has numbness in her hands, causing her to drop objects.
>
> An MRI of the cervical spine taken on April 26, 2016, showed degenerative changes with cord flattening and significant foraminal stenosis, particularly at C3-C4, C4-C5, and C5-C6 accompanied with reversal of the cervical lordosis and convexity towards the right. The claimant underwent an MRI of the left shoulder on May 3, 2016, which exhibited

11

supraspinatus tendinopathy with no evidence of a tear. One day later, an MRI of the right shoulder taken on May 4, 2016 revealed rotator cuff tendinopathy and fraying and AC joint arthropathy. Several months after the DLI ended, an MRI of the right shoulder taken on November 8, 2017 showed supraspinatus tendinopathy with no tear, AC arthritis, and bursitis. At the hearing, medical expert Beverly Yamour, M.D. testified that there was little medical evidence prior to claimant's DLI. She did not believe that listing 1.15 was met because of the absence of the "D" criteria, but she stated the claimant would be limited to a sedentary exertional level with an ability to lift up to fifteen pounds occasionally, consistent with statements in 17F by Dr. Kalter, a treating provider. These opinions also seem consistent with treatment notes, albeit after claimant's DLI, that note claimant to have greater than 75 percent improvement in her neck pain with cervical epidural injections, with claimant reporting less pain with improvement in range of motion. These records also note that claimant has undergone shoulder injections in the past that have helped. Finally, Dr. Yamour noted that the medication Buprenorphine was helping significantly with claimant's pain and reports that she was happy with the response.

(*Id.*)

After consideration of the evidence, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record…" (*Id.* at 18-19.)

The ALJ noted:

Outside of MRI imagings dated April and May 2016 in Exhibit 2F, the medical record reflects no actual treatment for the claimant's alleged impairments of degenerative disc disease of the cervical spine and degenerative joint disease of the bilateral shoulders. The bulk of the claimant's medical records are dated many years after the conclusion of the DLI and do not apply to the applicable period for which the claimant's allegations of disability is being assessed. The lack of medical evidence between the alleged onset and DLI undermines any finding the claimant was disabled during that period of time.

***

Dr. Yamour's opinion is persuasive because she was able to review the claimant's entire medical record and her opinion is consistent with the positive findings noted on the claimant's MRI's that were taken prior to the DLI. Limiting the claimant to sedentary work is supported by the deficits in her neck and the bilateral shoulders, especially since it would restrict the claimant's exertional capabilities. Notably, Dr. Yamour added the claimant was doing well on medications after the DLI and did not make a finding that would support disability. For these reasons, Dr. Yamour's opinion is highly convincing in finding the claimant not disabled.

The opinions of state agency medical consultants Edward Kamin, Ph.D. and L. Haus, Psy.D., in November 2019 and October 2020 stating there was insufficient evidence to evaluate the claimant's mental impairments are persuasive. Specifically, the claimant did not allege any mental impairments and there are no mental health treatment records from between the alleged onset date and the DLI. Thus, the statements of Dr. Kamin and Dr. Haus that there is insufficient evidence to evaluate a claim of psychiatric issues is accurate.

The medical record contains an opinion submitted by Matthew Kalter, M.D., dated July 20, 2021, which is less persuasive, as are numerous statements by Dr. Kalter in exhibit 17F in which he recommends that claimant not lift greater than fifteen pounds. Dr. Kalter first started treating the claimant in March 2020, when he began recommending no lifting greater than fifteen pounds, and he completed the opinion form in July 2021, both of which are dated three to four years after the DLI. These opinions are less persuasive because Dr. Kalter is evaluating the claimant during a time period after the end of the DLI. Since Dr. Kalter's opinions do not apply to the period between the alleged onset date and the DLI, they are given little merit in evaluating the claimant's physical functional capabilities during that time period.

State agency medical consultants S. Stradley, DO and J. Randall, M.D., are partially persuasive in finding there is insufficient evidence regarding the claimant's physical impairments. It is more persuasive because there is little medical evidence during the applicable time period other than MRI imagings of the cervical spine and left shoulder. This helps establish that the claimant does not have disabling physical impairments that would prevent her from performing work activities. On the other hand, the opinion is less persuasive because based on the MRI imagings, Dr. Stradley and Dr. Randall can put forth a residual functional capacity that shows some deficits in the claimant's physical functioning. As such, Dr. Stradley and Dr. Randall are given merit to the extent that they both confirmed the lack of medical evidence between the alleged onset date and the DLI.

(*Id*. at 19-20.)

## III.   **Procedural History**

Plaintiff commenced the instant action on November 22, 2022, seeking this Court's review of the decision of the Commissioner, pursuant to Section 205(g) and/or Section 1631 of the Act. (ECF No. 1 at ¶ 1.) Plaintiff asserted that the ALJ's Decision denying her application for disability benefits was "erroneous, not supported by substantial evidence in the record, and/or contrary to the applicable law." (*Id*. at ¶ 11.) On May 31, 2023, the parties consented to the undersigned's jurisdiction for all purposes, and the case was reassigned to the undersigned on June 6, 2023. (*See* ECF Nos. 16, 17.) On June 13, 2023, Plaintiff filed her Motion for Judgment on the Pleadings

(ECF No. 18), in accordance with the briefing schedule set by the previously assigned District Judge. (*See* Electronic Order dated April 18, 2023.)

On June 23, 2023, the undersigned withdrew Plaintiff's Motion for Judgment on the Pleadings without prejudice and with leave to renew in compliance with the undersigned's Individual Practice Rules, in light of the parties' consent to the undersigned's jurisdiction and subsequent reassignment of the case to the undersigned. (Electronic Order dated June 23, 2023.) On September 9, 2023, Plaintiff filed her renewed Motion for Judgment on the Pleadings (ECF No. 22), and, on September 1, 2023, the Commissioner filed a Cross-Motion for Judgment on the Pleadings (ECF No. 24.)

## IV. The Parties' Contentions

### A. Plaintiff's Motion for Judgment on the Pleadings

In her Motion for Judgment on the Pleadings, Plaintiff argues that the ALJ erred in three aspects in reaching his determination to deny her disability benefits. (ECF No. 22 at 11.) *First*, Plaintiff contends the ALJ erred at Step Two in assessing Ms. Crane's mental impairments as these mental impairments were diagnosed after the DLI, thus warranting a remand. (*Id*.) Plaintiff argues her medical records from March 13, 2017, show a history of these conditions, and that PA John Peter Ruiz diagnosed Ms. Crane with depression and anxiety on that date. (*Id.*) Additionally, Plaintiff argues that Dr. Hussaini also noted a long history of these issues, further supporting the diagnosis before the DLI. (*Id.*) Moreover, Plaintiff contends that under §404.1520a(b)(2), the ALJ must assess the severity of a medically determinable mental impairment by evaluating four functional areas (understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and adapting or managing oneself) and documenting the findings in the decision, and, in this case, the ALJ failed to properly evaluate Ms. Crane's mental impairments using this standard. (*Id.* at 12.)

*Second*, Plaintiff argues the ALJ failed to satisfy the affirmative duty to develop the administrative record in a disability benefits case. (*Id.*) Plaintiff notes the ALJ is required to investigate and develop both supportive and contradictory evidence, especially when the claimant appears *pro se*. (*Id.*). Despite her major depressive disorder and anxiety disorder, Plaintiff contends the record lacks sufficient mental health documentation, and the ALJ did not ask her any questions about her mental health limitations during the hearings. (*Id*. at 13.) Ms. Crane further contends that a remand is warranted because the duty is crucial for applicants with mental illness due to the challenges in assessing their workplace adaptability. (*Id*.)

*And Third*, Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence. (*Id*.) As indicated by the 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv), Plaintiff identifies the ALJ must consider the type, dosage, effectiveness, and side effects of any medication when determining the RFC. (*Id*.) Plaintiff additionally states that Courts have emphasized that side effects are crucial in assessing a claimant's ability to work. (*Id*.) She argues that her treating physician, Dr. Kalter, noted that her pain medications prevent her from driving or operating machinery, yet the ALJ did not include these limitations in the RFC or explain why they were not considered. (*Id*. at 14.)

### B.    Defendant's Cross-Motion for Judgment on the Pleadings

Defendant's Cross-Motion for Judgment on the Pleadings seeks an affirmance of the ALJ's Decision on three grounds. (ECF No. 24 at 10-16.) *First*, Defendant contends the ALJ correctly determined Ms. Crane's generalized anxiety and major depressive disorders were not medically determinable impairments during the relevant period, as no objective medical evidence was presented. (*Id*. at 10.) Under 20 C.F.R. § 404.1521 and SSR 96-4p, Defendant asserts a diagnosis or medical opinion alone is insufficient; objective evidence is required. (*Id*.) Defendant maintains that Ms. Crane's cited records, including an initial evaluation from March 13, 2017, and a 2020

evaluation by Dr. Syed Hussaini, do not provide the necessary objective evidence. (*Id*. at 11.) Defendant contends there was no evidence that these impairments caused any limitations during the relevant period, as confirmed by the State agency psychological consultants. (*Id*. at 12.)

*Second*, Defendant argues the ALJ adequately met his duty to develop the record which is only required if there are obvious gaps that prevent a disability decision, and Plaintiff does not identify any missing medical evidence. (*Id.*) Defendant maintains the ALJ took reasonable steps to fully develop the record by inquiring about Plaintiff's healthcare providers, obtaining relevant records, and securing medical expert testimony. (*Id.*) Defendant argues that Plaintiff identified all her healthcare providers during the hearings, and no additional records were indicated. (*Id*. at 13.) Defendant contends Plaintiff's claim that the existing mental health records were "minimal" and "speculation about additional records" is insufficient for remand, and further notes that the Regulations only require a medical history for the 12 months before the date last insured. (*Id*. at 14.)

*Third*, Defendant contends the ALJ's RFC determination was supported by substantial evidence. (*Id*.) Defendant identifies that "Plaintiff asserts that the RFC needed to include limitations on driving and operating machinery based on Dr. Kalter's July 2021 opinion that side effects from her pain medication precluded these activities[,]" but asserts that "Plaintiff's argument fails on several counts." (*Id*.) Defendant argues the lack of evidence that the Plaintiff was taking pain medication or receiving treatment for her musculoskeletal impairments during the relevant period shows that Plaintiff cannot prove she was entitled to such limitations without evidence of medication use at that time. (*Id*.) Additionally, Defendant maintains that Dr. Kalter's opinion is less persuasive because of the timing and relevance. (*Id*.) Specifically, Defendant argues Dr. Kalter did not begin treating Plaintiff until March 2020 – three years after the relevant period – and his opinion dated July 2021 does not assess Plaintiff's functioning prior to March 31, 2017. (*Id*. at

15.) Furthermore, Defendant maintains "there is no indication that Dr. Kalter knew what medications Plaintiff was taking during the relevant period." (*Id.*)

The Defendant argues – as the ALJ found – Dr. Yamour's opinion is "more persuasive." (*Id.*) Dr. Yamour, who reviewed Dr. Kalter's notes, did not assess any limitations on driving or operating machinery. (*Id.*) Finally, Defendant argues that Plaintiff could return to her past relevant work as an audit clerk, a position that does not require driving or operating machinery. (*Id.*) Defendant identifies that Dr. Kalter also indicated that Plaintiff could use standard public transportation, allowing her to get to and from work without driving. (*Id.*) Therefore, according to Defendant, even if the RFC had included these limitations, it would not have changed the conclusion that Plaintiff was not disabled. (*Id.*)

## DISCUSSION

### I.    Legal Framework

When determining if the Social Security Administration's denial of disability benefits was warranted, the court will review *de novo* "whether the correct legal principles were applied and whether substantial evidence supports the decision." *Balotti v. Comm'r of Soc. Sec.*, 605 F. Supp. 3d 610, 613 (3d Cir. 2022) (quoting *Butts v. Barnhard*, 388 F.3d 377, 384 (2d Cir. 2004)). Here, the correct legal principles are the five-step inquiry described as the "Social Security Disability Standard" outlined below.  "If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must 'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'" *Balotti*, *605* F. Supp. 3d at 613 (quoting *Brault v. Soc. Sec. Admin'n Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam)).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Chater*, 77 F.3d 41,

46 (2d Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Cardin v. Comm'r of Soc. Sec.*, No. 23-755, 2024 WL 2180216, at *1 (2d Cir. May 15, 2024) (citing *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)) ("The substantial evidence standard requires that we accept the agency's factual findings unless a reasonable factfinder would be compelled to conclude otherwise."). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record,  including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)). As such, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." *State of New York ex rel.  Bodnar v. Sec. of Health and Human Servs.*, 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision must be supported by "adequate findings . . . having rational probative force." *Veino v.  Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (under the substantial evidence standard of review, the plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record, rather than merely disagree with the ALJ's weighing of the evidence or argue that evidence in the record could support his or her position).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Thus, an individual must be found disabled when his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.*
§ 423(d)(2)(A). The correct legal principle that ALJs must undertake to ascertain a claimant's
status is the sequential five-step inquiry of the Social Security Disability Standard outlined by the
Commissioner's regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. According to this framework,
a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the
> impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires
> a determination of disability, and (4) that the claimant is not capable of continuing in his
> prior type of work, the Commissioner must find his disabled if (5) there is not another type
> of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335
F.3d 99, 106 (2d Cir. 2003)).

At step one, the Plaintiff must prove s/he is not employed in "substantial gainful activity"
("SGA").   "[SGA] is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572.
"'Substantial work activity' is work activity that involves doing significant physical or mental
activities." (*Id.* § 404.1572(a)). "Gainful work activity" is work that is usually done for pay or
profit, "whether or not a profit is realized." (*Id.* § 404.1572(b)).

At step two, the Plaintiff must prove s/he is significantly limited in his/her physical or
mental abilities to perform basic work activities. "Basic work activities" are "activities and
aptitudes necessary to do most jobs." *Sharmara A. v. Comm'r of Soc. Sec.*, No. 23-CV-6171 (LJV),
2023 U.S. Dist. LEXIS 230336, at *5 (W.D.N.Y. Dec. 28, 2023) (quoting   20 C.F.R. §
404.1522(b)).

At step three, Plaintiff must prove that the impairments meet or are equivalent to one of
the impairments listed in 20 C.F.R. 404 to render her as "disabled." "If the severe impairments do
not meet or equal a listed impairment, an administrative law judge assesses the social security

claimant's residual function capacity based on all the relevant medical and other evidence in the case record." *McAllister v. Colvin*, 205 F. Supp. 3d 314, 327 (E.D.N.Y. 2016) (quoting 20 C.F.R. § 404.1520(e)). At step four, the plaintiff must prove that he is incapable of meeting the physical and mental demands of work; and if the ALJ failed to develop the record. At step five, the Commissioner bears the burden to demonstrate that "there is work in the national economy that the claimant can do" upon consideration of the plaintiff's RFC, age, education, and prior work experience, are there any other jobs Plaintiff could perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Pursuant to updated regulations, claims filed after March 27, 2017[1] will not apply a "presumption of controlling weight" to a treating doctor's opinion. *Balotti*, 605 F. Supp. 3d at 616. Instead, the revised regulations for evaluating a doctor's opinion evidence place substantial emphasis on two factors: supportability and consistency. *Id.*, *See* 20 C.F.R. § 404.1520 (a). To avoid legal error, "[a]n ALJ must not only apply supportability and consistency in evaluating medical source opinions but also must explain the analysis of these factors in the decision." *Balotti*, 605 F. Supp. 3d at 617; 20 C.F.R. § 404.1520 (c)(b)(2). The first factor of supportability "refers to the extent to which a medical source's opinion is supported by objective medical evidence and the medical source's explanations." *Balotti*, 605 F. Supp. 3d at 616; 20 C.F.R. § 404.1520 (c)(1). A medical opinion is considered persuasive when it is more relevant to the objective medical evidence and the medical source's explanations. *See id.* The second element of consistency "refers to the extent to which a medical source's opinion is consistent with other medical or non-medical sources." *Id.* "[I]f two or more medical opinions or prior administrative medical findings are both

---

[1] Until March 27, 2017, regulations required application of the so-called "treating physician rule" pursuant to which the opinion of a claimant.s treating physician presumptively was entitled to "controlling weight." 20 C.F.R. § 404.1520 (c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

equally well supported and consistent," the ALJ must consider other factors listed in 20 CFR 404.1520. *See* 20 C.F.R. § 404.1520. These factors are "Relationship with the claimant," "Extent of the treatment relationship," and "Examining relationship." *See id.* § 404.1520 (c)-(e).

The Court will not defer to the Commissioner's determination if it is a product of legal error resulting from inadequate application of supportability or consistency. *See Balotti*, 605 F. Supp. 3d, 613 (quoting *Dunston v. Colvin*, 14-CV-3859, 2015 U.S. Dist. LEXIS 438, 2015 WL 54169 at *4 (S.D.N.Y. Jan 5, 2015)).

## II. Analysis

As stated, Plaintiff asserts that the ALJ Decision should be reversed because: (i) the ALJ erred at Step Two in finding Plaintiff does not have medically determinable mental impairments; (ii) the ALJ failed to perform the affirmative duty to develop the administrative record by addressing deficiencies in the record; and (iii) the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 22 at 11-13.) In response, Defendant counters that the ALJ's Decision is free of legal error because the ALJ: (i) properly identified medically determinable impairments, (ii) developed the administrative record, and (iii) based his decision on substantial evidence. (ECF No. 24 at 10-15.) Defendant specifically contends that the Court should uphold the Commissioner's decision because substantial evidence supports the Commissioner's finding that the Plaintiff's impairments do not prevent the performance of a range of medium, unskilled work. (*Id.* at 5.) The Court considers each of the parties' arguments on these points in turn.

### A. The ALJ Correctly Determined Plaintiff's Anxiety and Depression Are Not "Medically Determinable Impairments"

As a general standard, the plaintiff bears the burden of establishing that: (i) she has a medically determinable impairment which (ii) severely limits her ability to perform ordinary work. *See Lorraine Michele H. v. Comm'r of Soc. SEC.*, 2022 U.S. Dist. LEXIS 165962, at *4 (N.D.N.Y. Sept. 13, 2022). An impairment is medically determinable if it "(1) results from anatomical,

physiological, or psychological abnormalities that (2) can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See* C.F.R. § 404.1521. A medically determinable physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id*. A claimant's own statement of symptoms, diagnosis, or medical opinion is insufficient. *See id.*; 42 U.S.C. § 423 (d)(5)(A). *See e.g.*, *Thomas K. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 81147, *12 (W.D.N.Y. May 8, 2023) ("*Thomas K.*") (finding a physician's report did not constitute objective evidence of a medically determinable back pain condition, where his diagnosis of a "[h]istory of chronic pain in the lower back" was merely a recitation of the Plaintiff's self-reporting, and not a medical finding).

The time limit for medically determinable impairments is the DLI because, for Title II DIB claims, "adjudicators cannot establish onset after the DLI." 20 CFR 404.131; *see also Shrecengost v. Colvin*, 2015 U.S. Dist. LEXIS 116299, *7 (W.D.N.Y. Sept 1, 2015) (finding the claimant failed to provide evidence proving a severe medically determinable impairment where he did not seek treatment for a mental impairment until 25 days before the DLI expired, and nearly a year after the alleged onset date); *Jecca Jecca v. Kijakazi*, 2022 U.S. Dist. LEXIS 152602, *26-28 (S.D.N.Y. Aug 23, 2022) (upholding the ALJ's step decision finding no medically determinable impairment due to: (i) the absence of notes from the plaintiff's nutritionist, (ii) a lack of direct evidence regarding the Plaintiff's BMI on or before the DLI, which is March 31, 2018, and (iii) the unavailability of records predating her DLI that addressed her anorexia).

"[A]fter determining the medically determinable impairment, the [C]ourt must then rate the degree of functional limitation resulting from the impairment(s) in four broad functional areas that a person uses in a work setting, on a scale of none, mild, moderate, marked, and extreme." *Petruno v. Kijakazi*, 2024 U.S. Dist. LEXIS 22444, *13 (W.D.N.Y. Feb. 28, 2024) (citing 20

C.F.R. § 416.920a(b)(2), (c)(4)); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b)). The evidence associated with medically determinable impairment will generally be given more weight if the symptoms associated with limitations are consistent with objective findings. *See* 20 C.F.R 220.4 (a). If the Court assigns a rating of "none" or "mild" to the degrees of limitation, the Court will typically determine that the claimant's impairment(s) is not severe unless the evidence shows that there is more than a minimal limitation in the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 416.920a(d)(1). In *Petruno*, the court ruled that the ALJ correctly found the medically determinable impairment does not count as severe because, despite Plaintiff's assertion that he preferred not to interact with others, the record does not suggest he was incapable of doing so as he demonstrated cooperation, maintained a normal mood, and had no difficulties with authority figures. *See Petruno v. Kijakazi*, 2024 U.S. Dist. LEXIS 22444, *15 (W.D.N.Y. Feb 28, 2024).

Here, the Court finds that Plaintiff failed to show her anxiety and depression were medically determinable impairments during the relevant period, which should be on or before the DLI. *See* 20 C.F.R 404.131. All of the evidence that Plaintiff relies on in support of her position from medical experts is dated after the DLI. *See* ECF No. 22 at 6-7. While Plaintiff argues that PA John Peter Ruiz's opinion, given on March 13, 2017, which was before the DLI, should be considered medically determinable evidence for the impairment, the Court notes PA Ruiz's medical opinion lacked objective laboratory results, making it insufficient to establish medically determinable impairments. *See e.g*., *Thomas K.*, 2023 U.S. Dist. LEXIS 81147, *12.

By contrast, the psychiatric examination conducted during that visit revealed normal findings, which contradicted the claims of severe anxiety and depression, and therefore cannot support PA Ruiz's opinion. Consequently, the opinion does not meet the necessary criteria for

substantiating the presence of a medically determinable impairment. *See e.g., Jecca Jecca*, 2022 U.S. Dist. LEXIS 152602 at *26-28; *see also Shrecengost*, 2015 U.S. Dist. LEXIS 116299 at *7. Likewise, the Court finds Dr. Hussaini's opinion on depression and anxiety fails to support PA Ruiz's opinion as it doesn't meet regulatory requirements, relying solely on Ms. Crane's personal accounts instead of the required objective lab examinations. *See* 20 C.F.R. § 404.1521 (explaining that the Agency cannot rely on a claimant's statement of symptoms to establish the existence of a medically determinable impairment); ECF 24-1 at 7; *Thomas K.*, 2023 U.S. Dist. LEXIS 81147 at *12.  In the absence of a physician's opinion and diagnosis that correlated with objective laboratory test results prior to the DLI, a reasonable factfinder could conclude that Plaintiff's anxiety and depression were not medically determinable impairments. *See e.g.*, *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (explaining that the Commissioner's findings of fact must be upheld unless "a reasonable factfinder *would have to conclude otherwise*.") (emphasis in the original); *see also Petruno*, 2024 U.S. Dist. LEXIS 22444 at 13 (holding the ALJ correctly determined Plaintiff's impairment was not severe because of the absence of substantial evidence to support the conclusion) As such, the Court finds the ALJ correctly determined that Dr. Hussaini and PA Ruiz's opinions relied on speculative claims without objective clinical findings or diagnostic tests, and, therefore, Plaintiff lacked the necessary corroborative medical evidence to establish a medically determinable impairment.

### B.    The ALJ Adequately Performed His Affirmative Duty to Develop the Administrative Record

Prior to determining if the Commissioner's final decision is backed by substantial evidence under 42 U.S.C. § 405(g), the Court must first ensure that the ALJ granted the plaintiff a full hearing under the Secretary's regulations and thoroughly developed the administrative record. *See Scott v. Astrue*, 2010 U.S. Dist. LEXIS 68913, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria*

*v. Sec'y of Health& Hum. Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).  The ALJ must develop the record even where the claimant has legal counsel. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The Appeals Council then evaluates the entire record, including any new and material evidence submitted if it is chronologically relevant, to determine if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently on record. *See* 20 C.F.R. § 404.970(b); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014).

Where, as here, a claimant appears *pro se* at the hearing, the ALJ has a heightened duty to develop the administrative record prior to reaching a disability determination. *See Cullinane v. Sec. of Dep't of Health and Human Servs.*, 728 F.2d 137, 139 (2d Cir. 1984). Remand for new hearing is specifically appropriate where the ALJ failed to assist the *pro se* litigant in securing all relevant medical testimony. *See id.* ("An ALJ has an affirmative duty to assist a *pro se* claimant . . . and to probe into, inquire of, and explore for all relevant facts. A reviewing court is charged with the responsibility of ensuring the evidence is both developed and considered."). Whether the ALJ has satisfied his duty to develop the administrative record is a threshold question. *See Campbell v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 142734, *40-41 (W.D.N.Y. Aug. 10, 2020).

Here, the Court finds the ALJ did perform and satisfy his affirmative duty to develop the administrative record. *First*, an administrative hearing was held before the ALJ on November 16, 2021, and, during the hearing, the ALJ evaluated the medical records provided to him. The duty to develop the record does not extend to speculative or vague claims of missing evidence or require the ALJ to obtain the alleged missing evidence on behalf of the claimant. *See e.g.*, *Perez*, 77 F.3d at 48 (rejecting Plaintiff's contention that the ALJ failed to develop the record by not obtaining information from the physicians who had ordered the CT of her brain and the MRIs of her spine,

25

where the "ALJ stated that he considered the reports of the results of the CT and MRI tests, and that he found that they did not provide evidence demonstrating that [Plaintiff] was disabled" and where "there [was] nothing to indicate that the reports were inconclusive[,]" and further noting that "the ALJ was not obligated to request further information from the doctors who had ordered the CT and MRIs."). Although Plaintiff initially identified several missing medical opinions and claimed that obtaining them would "complete" the medical evidence, she failed to provide any means to obtain these opinions, making it unreasonable for the ALJ to acquire the information. *See e.g., Krystal R. v. Comm'r of Soc. Sec.*, No. 8:20-CV-0513 (ML), 2021 WL 3287776, at *6 (N.D.N.Y. Aug. 2, 2021) ("The ALJ's disability determination was based upon medical records totaling almost 1000 pages and included an opinion from Dr. Bonnabesse, along with physical and psychiatric consultative examinations. Based on Plaintiff's hearing testimony, the single missing note from Dr. Bonnabesse did not identify any significant deterioration in Plaintiff's condition or substantial changes in treatment approach that were not otherwise addressed in the record. Plaintiff has not provided any further details that would suggest this single treatment note could alter the ALJ's decision, and did not provide the document to the Appeals Council or this Court."); *see also Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 44 (2d Cir. 2020) (rejecting Plaintiff's argument that the ALJ did not obtain critical medical records, in part, because Plaintiff did not provide them to the district court or describe their contents).

Specifically, the Court finds the ALJ diligently garnered all relevant information and evidence necessary for a fair adjudication of Plaintiff's claims and made a diligent effort to develop the administrative record by: (i) requesting medical records, (ii) arranging consultative examinations, and (iii) considering all the evidence presented by Plaintiff. During the hearing, the ALJ inquired about Plaintiff's healthcare providers, obtained the records from all the sources that

she identified, and obtained medical expert testimony analyzing the complete medical records. *See e.g.*, *Umansky v. Apfel*, 7 F. App'x 124, 127 (2d Cir. 2001) (diligent effort is shown by contacting treating physicians to further explain their medical opinions); *Rivers v. Kijakaz*i, 2023 U.S. App. LEXIS 6002, *4 (2d Cir. 2023) (the duty to develop the record requires the ALJ to contact treating physicians for their medical opinion on the extent to which the claimant's injury impacted her ability to function); *Garcia v. Apfel*, 1999 U.S. Dist. LEXIS 17969, *19 (S.D.N.Y. Nov. 19, 1999) (holding the ALJ was required to request direct medical evidence from the treating and consultative sources about Plaintiff's ability to perform sedentary work); *Krystal R*, 2021 U.S. Dist. LEXIS 143586, *1 (finding the ALJ fulfilled his enhanced duty to develop the administrative record as mandated by 42 U.S.C.S. § 423(d)(5)(B) based on the ALJ's numerous oral and written queries to the plaintiff about her treatment history, along with several requests to the plaintiff's pain management specialist to enhance the record). Accordingly, this Court finds that the "ALJ met his heightened obligation to develop the administrative record, and there are no grounds for remand related to this issue." *Krystal R*., No. 8:20-CV-0513 (ML), 2021 WL 3287776, at *6.

## C.      The ALJ's RFC Assessment Was Supported by Substantial Evidence

Pursuant to Social Security Ruling ("S.S.R.") 96-8p, an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *See* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *See id.* When conducting a function-by-function analysis for the RFC, the ALJ must assess the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch.  *Walters v. Astrue*, 11-CV-640 (VEB), 2013 U.S. Dist. LEXIS 20550, at *10 (N.D.N.Y.

Feb. 15, 2013) (citing 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a)).[2]  This

assessment is considered to discern the individual's ability to perform work-related activities,

taking into account the person's limitations or restrictions.  *Salati v. Saul*, 415 F. Supp. 3d 433,

451 (S.D.N.Y. 2019).  In doing so, the ALJ must cite to and include medical opinion authority in

the decision.  *Morse v. Saul*, 19-CV-304-MJR, 2020 U.S. Dist. LEXIS 94494, at *11 (W.D.N.Y.

May 29, 2020).  Still, an ALJ must not put forth his own evaluations of the medical findings.  *Id*.

(erroneously giving limited weight to medical opinions and finding overwhelming support in non-

opinion mental health evidence).

An ALJ is "required to consider all of the medical opinion evidence in the record."  *Hahn*

*v. Saul*, 20-CV-06124 (KAM), 2023 U.S. Dist. LEXIS 135215, at *11 (E.D.N.Y. Aug. 3, 2023)

(citing § 404.1520(b)(c) ("We will articulate in our determination or decision how persuasive we

find all of the medical opinions and all of the prior administrative medical findings in your case

record.")).  In *Hahn*, the court stated that the ALJ's failure to discuss and consider a doctor's

assessment was grounds for remand.  *Id*. at *11-12.  Although the ALJ must consider all medical

evidence in the record, the new regulations state that an ALJ must not defer or give any specific

weight to a medical opinion or finding.  *Ronald D. v. Comm'r of Soc. Sec.*, No. 2:20-cv-00197,

2021 U.S. Dist. LEXIS 247735, at *10 (D. Vt. Dec. 29, 2021).

In *Rushford*, Plaintiff appealed the district court's judgment upholding denial of his

application for benefits.  *Rushford v. Kijakazi*, No. 23-317, 2023 U.S. App. LEXIS 34401 (2d Cir.

---

[2] An ALJ is not required to perform a function-by-function analysis in *every circumstance*.  So long as the
ALJ provides "an adequate basis for meaningful judicial review, applies the proper legal standards, and is
supported by substantial evidence such that an additional analysis would be unnecessary or superfluous."
*Milliken v. Berryhill*, 1:16-CV-00297 EAW, 2017 U.S. Dist. LEXIS 118950, at *54 (W.D.N.Y. July 28,
2017) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).  "Remand may be appropriate, however,
where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory
evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id*.
at *54-55.

Dec. 28, 2023).  The Court affirmed the district court's ruling on four grounds.  *First*, the Circuit found that the ALJ properly credited certain medical reports over others and explained why those opinions were supported by the record and consistent with other evidence.  In considering these opinions, he determined that Rushford was not disabled.  *Id.* at *2-3.  *Second*, the ALJ was correct in concluding that he was not per se disabled upon considering 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06-12.07, 12.15.2.  *Id*. at *4.  *Third*, the *Rushford* court found that the ALJ looked to Rushford's limitations and then discussed whether the intensity, persistence, and limiting effects of his symptoms would limit his work-related activities.  *Id*. at *5.  Upon this discussion, the ALJ concluded that Rushford could still engage in certain work.  *Id*. at *6.  *Fourth* and *finally*, the court also found that the ALJ properly considered the full scope of all Rushford's reported symptoms and appropriately discredited Rushford's subjective testimony in light of other evidence in the record.  *Id*. at *6-7.

Here, and like *Rushford,* the ALJ appropriately considered all evidence before him spanning from medical records to Plaintiff's testimony.  In sum, the ALJ's decision concerning the medical experts are supported by substantial evidence and free of legal error.  Nor did he substitute a physician's opinion for his own.  Rather, the denoted which physician's reports were particularly persuasive over others when compared to Plaintiff's own testimony and other physicians' reports.  *C.f. Balotti v. Comm'r of Soc. Sec*., 605 F. Supp. 3d 610 (S.D.N.Y. 2022) (granting the plaintiff's motion and remanded the case for further proceedings, where the ALJ: (i) failed to assess the supportability component of the new regulations since he omitted the source of the doctors' opinions; (ii) erred in relying upon clinical and objective findings and did not explain how they were inconsistent with the doctor's opinion; (iii) improperly drew medical conclusions herself; (iv) cherry picked portions of the physician's record, especially since there were other

29

portions discussing the severity of plaintiff's condition; and (v) failed to separately consider the supportability and consistency factors).

Plaintiff's contention that the ALJ failed to consider the side effects of pain medications and therefore did not engage in a proper RFC assessment is unavailing. Although the ALJ did not explicitly discuss side effects in determining the Plaintiff's RFC, "the Court finds no error as the record does not demonstrate that [P]laintiff was suffering from side effects that impacted [her] ability to do full-time work. This is not a circumstance where a plaintiff testified to or there are treatment records reflecting persistent side effects that the ALJ ignored." *Michael D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-104 (CFH), 2023 WL 3601718, at *10 (N.D.N.Y. May 23, 2023). Rather, the ALJ specifically noted that Dr. Yamour found Plaintiff "was doing well on medications after the DLI and did not make a finding that would support disability." *See* ECF No. 9 at 19-20; *see also Morsy v. Comm'r of Soc. Sec.*, No. 20-CV-3960(EK), 2023 WL 6385762, at *3 (E.D.N.Y. Sept. 29, 2023) ("Morsy's other treatment records also do not indicate that she complained of side effects to her physicians."). "In sum, the record does not indicate any significant side effects; on the contrary, it indicates the absence thereof. The ALJ accordingly did not err in declining to discuss [Plaintiff's] medications and side effects." *Id.*

Accordingly, remand is not warranted here, since the ALJ's opinion was based on his review of objective medical evidence before him which led to the conclusion that Plaintiff was ineligible for social security benefits. *See Bruce H. v. Comm'r of Soc. Sec.,* 1:21-CV-00596-LJV, 2024 U.S. Dist. LEXIS 72973, at *5 (W.D.N.Y. Apr. 22, 2024) ("As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error."); *cf. Warcholak v. Colvin*, No. 1:16-cv-00129(MAT), 2017 U.S. Dist. LEXIS 20806, at *13 (W.D.N.Y. Feb. 14, 2017) (remanding the matter where "the ALJ and the Appeals

Council misapplied the relevant legal standards, and failed to properly develop the record by obtaining a function-by-function assessment from a medical expert").

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 22) is **DENIED** and Defendant's Cross-Motion for Judgment on the Pleadings (ECF No. 24) is **GRANTED**.  The ALJ's Decision is therefore **AFFIRMED**.  The Clerk of the Court is directed to enter judgment accordingly and to close the case.

Dated: Central Islip, New York
       October 24, 2024

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge